Argued September 19, remanded October 12, 1972

DRUGG, *Petitioner, v.* JURAS, *Respondent.*

501 P2d 1313

*Walter L. Crow, Jr.,* Portland, argued the cause for petitioner. With him on the brief were Pozzi, Wilson & Atchison, Portland.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Petitioner appeals from an administrative determination of the Public Welfare Division which requires him to pay $708 for the calendar year 1969 as reimbursement for welfare benefits paid on account of petitioner's needy mother during that period of time. Petitioner had sought exemption from liability under the provisions of ORS 416.030 (2) (c) and 416.050 (2). Administrative hearings were held in July 1971 and January 1972. The copy of final decision in the record bears no date, however, the Petition for Judicial Review states it was dated March 17, 1972. Among the findings of the hearing officer were the following:

"2. The relative was born May 21, 1908 the oldest of six children. The relative's father was not steadily employed and the relative's mother, the recipient herein, was not employed at all. The family was usually at the extreme poverty level as transient farm workers. The relative worked from an early age and his earnings were taken by his father for the household. The relative was poorly clothed and received very little incentive from his parents to remain in school.

"The relative did not get along well with his father and often there were heated arguments. On one occasion the relative's father chased him out of the house with a knife. The relative's mother, the recipient, was not too affectionate, however, the relative 'does not have anything against his mother.'

"3. The constant fighting between the relative and his father ultimately led the relative to run away from home. He returned home occasionally thereafter to see his brothers and sisters,

but avoided contact with his parents. He received no subsequent support from his parents and from the age of approximately 12 years, maintained and supported himself."

From these findings the hearing officer concluded that petitioner during childhood

"was not deserted or abandoned. Nor was he expelled from the home. He voluntarily left the home because of differences with his father. The conduct of the relative's father cannot be imputed to his mother.

"There is no evidence of the relative having been subjected to cruelty by the recipient * * *.

"* * * [T]he relative did not have much incentive towards school * * *.

"The relative has established no basis upon which he would reasonably be exempt * * * under ORS 416.030 (2c)."

ORS 416.030 (2)(c) provides that a child of a needy person is exempt from paying toward the welfare costs of supporting that person:

"* * * if, during the minority of the child, such person wilfully deserted or abandoned the child, or, by expulsion or cruelty, drove the child from the parental home, or, *without good cause, was responsible for the child's being 'dependent' as defined by subsection (2) of ORS 418.205.*" (Emphasis supplied.)

ORS 418.205 defines a dependent child as one

"* * * whose * * * condition is such as to fall within the provisions of paragraphs (a) to (e) of subsection (1) of ORS 419.476."

One of the petitioner's contentions was that he was a dependent child under the provisions of ORS 419.476 (1)(e) at the time he left the family home when he

was 11 years old, and that his mother did not have good cause for her failures in this regard. Subsection (1)(e) describes such a dependent child as one in a situation where

> "[e]ither *his parents* or any other person having his custody have abandoned him, *failed to provide him with the support or education required by law,* subjected him to cruelty or depravity or to unexplained physical injury *or failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being* * * *." (Emphasis supplied.) (*See Kerr v. Welfare Comm.,* 3 Or App 27, 470 P2d 167 (1970).)

The testimony of the petitioner was corroborated in detail by the testimony of his sister, two or three years younger, who lived in the same home with him prior to his leaving. They testified that the petitioner was the oldest child in their family, he was large for his age, his father gambled away much of the family's meager income, the family was hungry much of the time, the petitioner had inadequate, patched clothing, and as a result of these things he (as well as she) was the object of ridicule at school to the extent that he was ashamed and truant. The father and petitioner were at constant odds with one another. These conditions led to the petitioner's leaving home and school and going to work, first in the yard at a lumber mill where a friend got him hired, and then as a longshoreman while he was only 12 years of age. The employment facts thus testified to are the only evidence on the subject in the record, and although they are startling, there is no reason to disbelieve them. The hearing officer did substantially find them to be facts. Petitioner was born in 1908; consequently these events occurred in 1919 and 1920. II Lord's Oregon Laws (1910),

including amendments in effect in 1919, at that time provided:

> Section 4119. "Every parent * * * having control * * * of any child * * * between and including the ages of nine and fourteen * * * shall be required to send such child * * * to the * * * schools * * * [subject to exceptions not applicable to this case]."

> Section 5023. "No child under fourteen years * * * shall be employed * * * in connection with, any factory * * * work-shop * * *." [As amended by General Laws of Oregon 1911, ch 138, p 185.]

> Section 5024. "No child under the age of fourteen years shall be employed in * * * labor of any form * * * during the hours when the public schools * * * are in session."

> Section 5025. "Attendance at school shall be compulsory upon all children between the ages of eight and fourteen * * *."

These statutes expressed a strong public policy of the state and placed upon each parent the responsibility for seeing that his or her child attended school and did not become a child laborer. Various inferences may be drawn from the evidence reviewed above, among them that neither parent had good cause to allow the petitioner to leave school and become a child laborer in violation of the law. The findings and conclusions do not specifically consider those parts of ORS 419.476 (1)(e) emphasized above, having to do with responsibility for failing without good cause, to provide "support and education required by law," and "protection necessary for his physical, mental or emotional well-being." We do not think that the general conclusion that the relative has established "no basis" under ORS 416.030(2)(c) for exemption is sufficient to overcome this shortcoming, particularly in view of the apparent

failure to consider the statutory duties imposed on each of petitioner's parents which have been noted above.

ORS 183.470 (a part of the Administrative Procedures Act applicable to the procedure in this case) provides that

"\* \* \* a final order shall be accompanied by findings of fact and conclusions of law. The findings of fact shall consist of a concise statement of the underlying facts supporting the findings as to each contested issue of fact *and as to each ultimate fact required to support the agency's order* \* \* \*." (Emphasis supplied.)

ORS 183.480 (7) provides that on review, this court may affirm, reverse or remand, but that for an error in procedure to be cause for reversal or remand this court "shall find that substantial rights of the petitioner were prejudiceed thereby \* \* \*." Inasmuch as petitioner's principal contentions were strongly tied to his cessation of school and commencement of child labor at age 11, we hold it was prejudicial to his cause not to have in the final order specific findings and conclusions on these contentions and with reference thereto whether there was good cause for his mother's failures of legal duty toward her child.

With reference to petitioner's contention that it was error under ORS 416.050 (2)[1] to hold that he was not entitled to a reduced contribution on account of his financial circumstances, the record discloses that, although petitioner had a basis in the evidence for supporting his position, the determination is nevertheless

---

[1] ORS 416.050 (2). "In determining the ability to contribute, the division may consider the financial circumstances of the relative and, in unusual cases, may permit a contribution of less than the amount fixed in the relatives' contribution scale."

"* * * supported by reliable, probative and substantial evidence in the whole record." ORS 183.480 (7) (d).

The proceeding is remanded for the required findings and conclusions and such other proceedings as are consistent with this opinion.